**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MATTHEW BLACKBURN, # 349241          *

     Plaintiff          *

        v          *          Civil Action Case No. DKC-11-2345

CORRECTIONAL MEDICAL SERVICES          *

     Defendant          *

**MEMORANDUM OPINION**

Pending is Matthew Blackburn's complaint under 42 U.S.C. § 1983, claiming inadequate medical treatment for a wrist injury. Counsel for Corizon, Inc., f/t/a/ Correctional Medical Services, (hereinafter Corizon)[1] has  filed a Motion to Dismiss for Failure to State a Claim, or, in the Alternative, for Summary Judgment with verified exhibits in support and which shall be treated as a motion for summary judgment. ECF No. 10. Blackburn has filed a response in opposition. ECF No. 15. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For reasons to follow, summary judgment will be denied without prejudice to refiling within forty-five days with exhibits demonstrating what treatment, if any has been provided to Plaintiff for his diagnosed nonunion fracture.

## I.    PLAINTIFF'S CLAIMS

Matthew Blackburn, an inmate confined at the Maryland Correctional Training Center in Hagerstown, filed a complaint on August 18, 2011, complaining that he has received inadequate medical treatment for a wrist injury sustained in 2008 while an inmate at Western Correctional Institution. He states that in May of 2008, he broke his wrist while playing football.  The wrist was x-rayed and "pronounced negative." ECF No. 1, Complaint, p. 8. Blackburn asserts that he complained for three years about pain and complications "to no avail." *Id.* He states a second x-

---

[1]          In 2011, Correctional Medical Services and PHS Correctional Healthcare merged to form Corizon, Inc. *See* http://www.corizonhealth.com.

ray was ordered, but never performed. *See id*. In May of 2011, his shoulder was x-rayed for an unrelated shoulder injury and showed a nonunion fracture of his right navicular bone for which surgery was recommended. *See id.* As relief, he asks the court to order injunctive relief whereby he will receive corrective surgery and damages for his pain and suffering and for defendant's deliberate indifference and negligence. *See id*.

## II.   FACTUAL BACKGROUND

Corizon has filed Blackburn's verified medical records as of November, 2011, in support of its dispositive motion. The undisputed facts show that on April 3, 2008, Blackburn, then confined at Western Correctional Institution, fell while playing ball, landed on his hand, and bent it backwards. April Baker, R.N. examined him and observed abrasions on his palm and slight swelling of his right hand. She gave Blackburn an elastic bandage ("Ace wrap") to wrap his wrist for two weeks and ice to use on his hand for three days. Exhibit B, pp. 1-2. Blackburn was reevaluated for a swollen, bruised, and painful hand the following day.[2] Exhibit B, p. 3. Blackburn stated he could not move his right wrist and was given ibuprofen for pain relief. He was referred to the physician for examination. Declaration of Colin Ottey, M.D., ECF No. 10, Exhibit A, ¶ 3; Exhibit B, pp. 8-9.

Blackburn submitted a Sick Call Request Form dated April 6, 2008, complaining that his hand was turning cold. On April 7, 2008, Jennifer Giles, R.N. ("Nurse Giles"), evaluated Blackburn. She reported that his left hand and fingers were swollen and cool to touch with limited range of motion ("ROM"), but with good capillary refill time ("CRT"). Capillary refill time assesses circulation to the hands and feet. ECF No. 10, Exhibit A, n. 2. She observed bruising to

---

[2]         The medical chart records Blackburn's left hand and fingers were swollen and cool to the touch. Defendant posits the reference to the left, not right hand was a typographical error because Blackburn had injured his right hand. ECF No. 10, Exhibit A, n. 1.

Blackburn's palm and ordered an x-ray of his hand.  The x-ray was performed on April 8, 2008, and was interpreted as negative for any fractures or dislocations.[3]  Exhibit B, p. 7.  Blackburn returned the Ace wrap on April 17, 2008. Exhibit A, ¶ 3.

On May 26, 2008, Blackburn complained of a right wrist injury from playing basketball. Dennis Martin, R.N. evaluated him, noting moderate swelling of right the wrist, full ROM with discomfort, and good CRT.  He gave Blackburn Motrin (ibuprofen) for pain, an Ace wrap to support his wrist, and an ice pack.  Blackburn was instructed to return for further evaluation and treatment if necessary. Exhibit A, ¶ 4.

Plaintiff offered no further complaints about his wrist until he submitted a Sick Call Request Form dated August 21, 2008, after he injured his right wrist in a fight on May 28, 2008. Examination revealed right wrist discomfort with movement, but no swelling to the inside of the wrist area. The nurse referred Blackburn to the physician.  Exhibit A, ¶ 5.

On September 1, 2008, Blackburn was examined by Samuel L. Deshay, M.D. ("Dr. Deshay").  Blackburn complained the pain in his right wrist worsened with movement and with grasping.  Examination revealed no swelling of the right hand, but Blackburn's grip was stronger in his left hand than his right.  Exhibit B, p. 12.  Dr. Deshay noted that the x-ray of Plaintiff's right hand had been read as negative.  *See id.*

On September 24, 2008,  Blackburn submitted a Sick Call Request Form stating that his right wrist continued to hurt.  Dr. Deshay evaluated him on October 3, 2008.  Upon examination Blackburn exhibited full ROM in his right wrist.  Dr. Deshay ordered an Ace wrap and physical therapy for the wrist, and a repeat x-ray.  Exhibit B, p. 14.  That same day, April Baker R.N. completed an x-ray order for Blackburn.  Exhibit B, p. 15.  Blackburn's medical records do not

---

[3]     Defendant indicates the radiologists who interpret x-rays for Corizon are not Corizon employees. ECF No. 10,  Exhibit A, n. 3.

show that a repeat x-ray was performed.  Exhibit A, ¶ 5.  In his Reply, Blackburn states his inquiries as to why [the repeat x-ray was not performed] were ignored.  ECF No. 15 Blackburn Affidavit, ¶ 1. Blackburn states "[o]ver the next thirty-two months my frequent complaints of pain were heard on an inconsistent basis and I eventually came to the conclusion that until I could prove something was wrong I could not do anything else." *Id.*

On October 12, 2008, a physical therapist evaluated Blackburn.  The therapist noted that Blackburn had pain with ROM, but no pain on palpation, no swelling, and no bruising.  The therapist indicated that Plaintiff would receive a course of physical therapy twice a week for four weeks to try to increase his ROM and function.  Blackburn received an Ace wrap on October 24, 2008, to use for one year.  On November 16, 2008, Blackburn completed physical therapy.  He denied pain at that time, and his ROM and strength were reported within functional limits.  Plaintiff stated that he was complying with his independent exercise program. Exhibit B, pp. 16-21.

On March 31, 2009, Blackburn submitted a Sick Call Request Form, asking about his elastic wrist support.  The nurse who screened the Sick Call Request Form noted that Plaintiff had no order for a wrist brace.  Blackburn was provided an Ace wrap on October 24, 2008. Exhibit A, ¶ 7.

Blackburn's Sick Call Request Form dated May 17, 2009, stated that his wrist had been "hurting a lot lately."  The nurse who examined Blackburn reported that he showed full ROM and equal strength in both hands.  Blackburn was advised to purchase ibuprofen and muscle rubs from the Commissary.  Exhibit A, ¶ 8.

On April 13, 2010, Blackburn submitted a Sick Call Request Form for pain in his right wrist. When summoned to sick call, Blackburn he refused to come or sign a Release of Responsibility form.  He submitted another Sick Call Request Form dated April 23, 2010, with the same

complaints, but was recorded as a "no show" for his appointment on April 30, 2010.  Exhibit B, p. 27-28.

On May 3, 3010, Blackburn submitted a Sick Call Request Form in which he indicated that he was in pain although the swelling had gone down.  On May 10, 2010, Blackburn was examined by Nurse William Beeman.  Examination revealed normal range of motion, no swelling, or other abnormal findings.  Blackburn was referred to a physician for evaluation.  Exhibit A, ¶ 9, Exhibit B, 30-31.

On May 28, 2010, Blackburn submitted a Sick Call Request Form for wrist pain.  Exhibit B, p. 32.  On July 7, 2010, Blackburn filed another Sick Call request.  In it, he wrote, "I seen [sic] Dr. Ottey approx. 2 ½ to 3 weeks ago about an ongoing injury to my right wrist.  It is getting worse.  I was supposed to have an x-ray, pain meds and some type of wrist sup but nothing has been done." Exhibit B, p. 33. [4]

On July 14, 2010, Dr. Ottey examined Blackburn.  Dr. Ottey recorded that Blackburn suffered moderate pain with motion, but no swelling, no effusion (abnormal fluid collection in a joint), and had full ROM with tenderness.  Dr. Ottey prescribed Neurontin, a medication to treat the chronic pain.  Exhibit B, pp 34-35.

On September 14, 2010, Blackburn told a nurse that he had pain with cuffing, could not write longer than 20 minutes, and could no longer do push-ups.  Plaintiff also said he had occasional tingling in his hand.  The nurse noted that Plaintiff had good ROM and CRT, no swelling, and no pain with movement.  The nurse advised Plaintiff to purchase ibuprofen from the Commissary. Exhibit B, pp. 35-36.

---

[4]     There is no record of that exam with Dr. Ottey in the record before this court.

Blackburn sustained injuries from playing basketball on December 23, 2010, to his left ankle, on February 4, 2011, to his left third finger, and on April 7, 2011, to his right shoulder. Exhibit B, pp. 37, 38, and 39.   On April 27, 2011, Plaintiff was transferred to the Maryland Correctional Training Center ("MCTC"). Exhibit A, ¶ 12.

On May 6, 2011, Ashok Krishnaswamy, M.D. ("Dr. Krishnaswamy"), an orthopedic surgeon, evaluated Blackburn for his right shoulder injury from April 7, 2011.  Plaintiff also told Dr. Krishnaswamy about the injury to his right wrist.  An x-ray of the right wrist revealed nonunion, or failure to mend, of the navicular bone.  Exhibit A, ¶ 13, Exhibit B, pp. 43-43.  Dr. Krishnaswamy described the fracture as "quite symptomatic" and advised that Blackburn might need "surgery for the right wrist bone grafting procedure …." Exhibit B, p. 43.

At MCTC, Robaxin (a muscle relaxant), Tylenol #3 (Tylenol with codeine, a narcotic), and Ultram (a strong NSAID) were prescribed for Plaintiff's complaint of shoulder and wrist pain.  The Tylenol #3 was discontinued on June 1, 2011, and the Ultram was discontinued on October 24, 2011.  Contah Nimely, M.D. ("Dr. Nimely"), noted that Plaintiff had normal ROM, but complained of pain with flexion (bending down) and extension (bending up) of his right wrist.  On October 6, 2011, Dr. Nimely submitted a Consultation Request form for a follow-up visit with Dr. Krishnaswamy to evaluate further and treat Plaintiff's shoulder and right wrist.  Exhibit B, p. 50. Blackburn was scheduled for a follow-up consultation with Dr. Krishnaswamy to evaluate further and treat his right wrist. Exhibit B, p. 53.[5]  On February 29, 2012, Blackburn submitted a letter in which he states that Dr. Nimely informed him that she had been instructed to manage his pain conservatively and he would not be provided surgery for his wrist fracture.  ECG No. 16.  He seeks an injunction directing defendants to provide more treatment.  Defendants have not filed a response.

---

[5]        There is no record whether the consultation took place or any subsequent treatments provided to Blackburn.

### III.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249(1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322–23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion."  *Matsushita Electric*

*Industrial. Co. Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654(1962)).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted).  Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993) (quoting *Felty v. Graves–Humpreys Company*, 818 F.2d 1126, 1128 (4th Cir.1987)).

## IV. DISCUSSION

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  When prison officials show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id.* at 104.  The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).  Mere negligence or malpractice does not rise to a constitutional level. *Miltier,* 896 F.2d at 848.  An inmate's disagreement with medical providers about the proper course of treatment does not support an

Eighth Amendment cause of action.  *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985);

*Wester v. Jones,* 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

The uncontroverted facts, viewed in the light most favorable to Blackburn, do not support a claim of constitutionally inadequate medical treatment as to his treatment or diagnosis for wrist pain prior to receiving the diagnosis of a nonunion fracture.  The record shows that Blackburn was examined, x-rayed and treated for his wrist injury with medication, bandage wraps, and physical therapy.  After the first x-ray returned negative findings and Blackburn continued to complain of wrist pain, a second x-ray was ordered.  While it is troubling that the second recommended x-ray was never taken, especially given Blackburn's assertions that he received no response to his follow-up inquiries, this does not amount to an omission "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," *Miltier,* 896 F.2d at 851, and Blackburn continued to receive treatment for his continuing complaints of wrist pain.  An assertion of negligence or malpractice does not amount to a claim of constitutional proportion.[6]

The circumstances of Blackburn's treatment after his diagnosis of nonunion fracture, however, are unclear.  Blackburn appears to take issue with the more recent care he is receiving for his fracture and wrist pain.  ECF No. 16.  It is unclear what treatment he is being provided for his fracture and genuine issues of fact remain.  Accordingly, the court will deny Defendant's Motion for Summary Judgment with leave to amend the Motion within forty-five days with verified exhibits indicating what treatment, if any, Blackburn is receiving for his diagnosed fracture and resulting pain.  Blackburn is granted twenty-eight days thereafter to reply to the amended Motion for Summary Judgment.   In the event an amended Motion is not filed, the court will appoint counsel and issue a scheduling order for trial.

---

[6]     The court expresses no opinion on their merits of such claims.

9

## V.   CONCLUSION

For these reasons the court will deny summary judgment with leave to amend within forty-five days.  A separate Order follows.


Date:   June 7, 2012                               /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge