IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MATTHEW BLACKBURN, # 349241 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-11-2345 |
| CORRECTIONAL MEDICAL SERVICES | * | |
| Defendant | * | |

********

# MEMORANDUM OPINION

Pending is the Amended Motion of Defendant Corizon, Inc. f/k/a Correctional Medical Services ("Corizon"), to Dismiss or, in the Alternative for Summary Judgment (ECF No. 19) and Plaintiff Matthew Blackburn's response in opposition (ECF No. 23). The court now rules pursuant to Local Rule 105.6, no hearing deemed necessary. For the following reasons, the Motion will be granted.

**I.     Background**

On June 7, 2012, the court construed Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 10) as a motion for summary judgment, and determined that Blackburn had failed to present a claim of constitutionally inadequate medical treatment as to his treatment or diagnosis for wrist pain prior May 6, 2011. ECF No. 17 at 9. The court, however, denied the motion without prejudice to refiling with exhibits addressing the treatment provided to Blackburn after he was diagnosed with a wrist fracture. *See id.*[1]

In support of its amended motion, Corizon has submitted the affidavit of Contah Nimely, M.D., Corizon's Medical Director at the Maryland Correctional Training Center ("MCTC"), the

---

[1] The facts are summarized in the court's memorandum of June 6, 2012. ECF No. 17. They will not repeated here unless pertinent to disposition of the instant papers.

facility where Blackburn was incarcerated at the time he filed his complaint.[2]  Dr. Nimely attests that three separate requests were submitted to Wexford Health Services[3] ("Wexford) for orthopedic follow-up treatment for Blackburn after he was diagnosed with a nonunion fracture of his wrist. ECF No. 19, Exhibit A, ¶¶ 4- 6.

On May 6, 2011, Ashok Krishnaswamy, M.D. examined Blackburn at Bon Secours Hospital.  An x-ray of the right wrist revealed a nonunion or failure to mend of the navicular bone, and Dr. Krishnaswamy determined that bone grafting might be needed.  ECF No. 19, ¶ 3, ECF No. 10 Exhibit A, ¶ 13, Exhibit B at 44.  Robaxin, Tylenol # 3 and Ultram were prescribed for Blackburn's complaints of pain.  The Tylenol # 3 was discontinued on June 1, 2011, and the Ultram was stopped on October 24, 2011.  ECF No. 19, Exhibit A ¶ 4.

Dr. Nimely attests that on October 6, 2011, she submitted an orthopedic consultation request for a follow-up visit with Dr. Krishnaswamy for further treatment and evaluation.  Wexford, however, did not approve the request.  *See id*. at ¶ 5; Exhibit B at 13, 15, 16-17. Blackburn's complaints of pain were treated with Neurontin and Naprosyn.  *See id*.

On February 15, 2012, Dr. Nimely submitted a second orthopedic consultation request for Blackburn.  Wexford denied the consultation and approved only conservative management.  *See id*; Exhibit B at 23-27.

On February 23, 2012, Dr. Nimely submitted a third orthopedic consultation request after Blackburn continued to present complaints of pain.  Wexford approved the request, but the appointment could not be scheduled until April 3, 2012.  ECF No. 19, Exhibit A ¶ 6; Exhibit B at

---

[2]  Blackburn was transferred to the Maryland Correctional Institution-Hagerstown on June 13, 2012.  ECF No. 19, Exhibit B at 64-67.

[3]  Wexford is the utilization review contractor for the State of Maryland.  When on-site or off-site consultants request or recommend certain medical treatment, Wexford's utilization review panel must give approval.  Corizon is not affiliated with Wexford and has no control over Wexford's approval process. ECF No. 19, Exhibit A n. 2.  Wexford is not a party in this case.

30, 31, 33-36. On April 3, 2012, Dr. Krishnaswamy examined Blackburn and recommended an open reduction and internal fixation of the fracture with a bone graft. *See id*. Dr. Krishnaswamy explained the surgery and its possible complications to Blackburn who agreed to the surgery. Blackburn was given a lace-up wrist brace to use until the surgery was approved and performed. On April 5, 2012, Wexford approved the surgery. ECF No. 19, Exhibit B at 27-29 and 32-40.

The surgery was performed at Bon Secours Hospital on May 22, 2012. Blackburn underwent an exploration of his right wrist with bone grafting of the nonunion fracture, and a short arm cast was applied. *See id*. ¶ 8. He stayed overnight in the Jessup Regional Infirmary and returned to MCTC on May 23, 2012. He was prescribed Nubain, Tylenol # 3, Naprosyn, and ibuprofen for post-operative pain relief. *See id.*

In his response, Blackburn maintains that Defendant's delay in treating his fractured wrist amounted to deliberate indifference to his medical needs. ECF No. 23.[4] He complains that "it took a full year" for the recommended surgery to take place which "more than constitutes deliberate indifference." Additionally, he claims his medications were stopped in October of 2011, some seven months before surgery.

---

[4] In his reply, Blackburn also complains that his wrist was operated on some four years after he first sustained his injury and faults Defendant for failing to provide him with a second x-ray. ECF No. 23. As noted, the court previously determined that Blackburn has failed to present a claim of constitutionally inadequate medical treatment as to his treatment or diagnosis for wrist pain prior May 6, 2011. ECF No. 17. To the extent he might intend to bring a malpractice suit in regard to the failure to take a second requested x-ray of his wrist, Maryland law provides that claim of medical negligence or malpractice may proceed only after review before the Maryland Health Claims Arbitration Board. *See* Md. Code, Cts. & Jud. Proc., § 3–2A–01 et seq.; *see also Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007); *Davison v. Sinai Hospital of Baltimore, Inc*., 462 F. Supp. 778, 779–81 (D. Md.1978); *Group Health Association, Inc. v. Blumenthal*, 295 Md. 104, 114, 453 A.2d 1198 (1983). There is no showing that Blackburn has sought such review. Further, the radiologists who review x-rays for Corizon are not Corizon employees. ECF No. 10, Memorandum, n. 4.

## II.   ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249(1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23 (1986).  On those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.  In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Electric Industrial. Co. Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654(1962)).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting

summary judgment. *See Anderson*, 477 U.S. at 252. A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993) (quoting *Felty v. Graves–Humpreys Company*, 818 F.2d 1126, 1128 (4th Cir.1987)).

### 2. Eighth Amendment

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When prison officials show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id.* at 104. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Further, a health provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *Miltier,* 896 F.2d at 848. An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). An inmate does not have a constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated

by a specific doctor, nurse, or other medical personnel. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care.").

### B. Discussion

The verified exhibits filed with Defendant's amended dispositive motion refute Blackburn's claim that he received constitutionally inadequate medical care after he was diagnosed with a nonunion fracture of his wrist. Dr. Nimely submitted three separate requests to Wexford for follow-up orthopedic treatment for Blackburn's wrist in response to his complaints and prescribed various pain medications. ECF No. 19, Exhibit A, ¶¶ 4-6. Corizon was not authorized to provide surgical intervention without Wexford's approval. ECF No. 19, Exhibit A, n. 2. Contrary to Blackburn's assertions that his pain medications were stopped for seven months, his medical records demonstrate that he received Neurontin until April 24, 2012, and Naprosyn until May 18, 2012. ECF No. 19, Exhibit B at 10, 19, 24, 28.[5] In sum, the record shows that medical providers monitored, treated and made repeated attempts to secure orthopedic follow-up for Blackburn's complaints. Under these facts, Blackburn fails to demonstrate that Corizon deliberately disregarded a serious risk of harm or rendered treatment so incompetent or inadequate as amount to a constitutional violation.

### III. CONCLUSION

For these reasons the court will grant Defendant's amended motion for summary judgment by separate order.

Date:   October 9, 2012                              /s/
                                              DEBORAH K. CHASANOW
                                              United States District Judge

---

[5] To the extent Blackburn might have taken issue with the type of pain medication provided to him, his disagreement with the types of medication prescribed does not state an Eighth Amendment claim. An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged).